CRH:JMH/SSA
F. #2018R02034

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

OTABEK MUMINOV,
NADJET BENMESSAOUD, and
MUKHAMMADKHON TOJIEV,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**T O  B E  F I L E D
U N D E R  S E A L**

C O M P L A I N T

No.   21-MJ-1180

(18 U.S.C. §§ 1029(a)(5), 1029(b)(2), 1956(h), 2314)

EASTERN DISTRICT OF NEW YORK, SS:

    STEPHEN G. HOFFMAN, being duly sworn, deposes and states that he is a Task Force Officer with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

    In or about and between August 2019 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OTABEK MUMINOV, NADJET BENMESSAOUD, and MUKHAMMADKHON TOJIEV, together with others, did knowingly and with intent to defraud conspire to effect transactions, with one or more access devices issued to another person or persons, to wit: credit card account numbers and debit card account numbers, to receive payments and other things of value during a one-year period, the aggregate value of

which was greater than $1,000 during such period, in a manner affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 1029(a)(5).

(Title 18, United States Code, Section 1029(b)(2))

In or about and between August 2019 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OTABEK MUMINOV, NADJET BENMESSAOUD, and MUKHAMMADKHON TOJIEV, together with others, did knowingly and with intent to defraud, effect transactions, with one or more access devices, issued to another person or persons, to wit: credit card account numbers and debit card account numbers, to receive payments and other things of value during a one-year period, the aggregate value of which was greater than $1,000 during such period, in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Section 1029(a)(5))

In or about and between August 2019 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OTABEK MUMINOV and MUKHAMMADKHON TOJIEV, together with others, did knowingly and intentionally conspire to: (a) conduct one or more financial transactions in and affecting interstate commerce, to wit: credit card and debit card transactions, which transactions in fact involved the proceeds of specified unlawful activity, to wit: access device fraud, conspiracy to commit access device fraud, and interstate transportation of stolen property, in violation of Title 18, United States Code, Sections 1029(a)(5), 1029(b)(2), and 2314, respectively, knowing that the property involved in the transactions represented proceeds of some form of unlawful activity, and with the intent to

promote the carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); and (b) conduct one or more financial transactions in and affecting interstate commerce, to wit: credit card and debit card transactions, which transactions in fact involved the proceeds of some form of unlawful activity, to wit: access device fraud, conspiracy to commit access device fraud, and interstate transportation of stolen property, in violation of Title 18, United States Code, Section 1029(a)(5), 1029(b)(2), and 2314, respectively, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h))

On or about and between August 2019 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OTABEK MUMINOV and MUKHAMMADKHON TOJIEV, together with others, did transport, transmit, or transfer in interstate commerce goods, wares, and merchandise, of a value of $5,000 or more, to wit: electronic devices, knowing the same to have been stolen, converted or taken by fraud, contrary to Title 18, United States Code, Section 2314.

(Title 18, United States Code, Section 2314)

The source of your deponent's information and the grounds for his/her belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary

1.      I am a Task Force Officer with the Federal Bureau of Investigation ("the FBI"). I have been a TFO since March 2006. I am also an Investigator with the New York State Police ("NYSP" or "State Police"), and have held that rank since August 2001, having joined the State Police in March 1992.

2.      I have been involved in the investigation of numerous cases involving fraudulent schemes, including but not limited to identity theft and credit card fraud that are among the subjects of this investigation. I have attended numerous trainings concerning fraudulent schemes involving credit card fraud and identity theft, among other subjects. I have participated in numerous arrests in the course of my law enforcement career.

3.      I am familiar with the facts and circumstances set forth below from my participation in the investigation; my interviews of witnesses; my review of the investigative file, including the criminal history record of the defendants, if any; and from reports of other law enforcement officers involved in the investigation.

4.      As discussed more fully below, the investigation has revealed that the defendants are engaged in a conspiracy to commit access device fraud and related crimes, via the principal means of acquiring high-value and easily transportable and transferrable electronic merchandise.

5.      The investigation has revealed that the criminal scheme follows a basic pattern. In summary, the defendants and their co-conspirators: (1) obtain control of a credit card or debit card belonging to another person; (2) purchase valuable electronics with the

---

to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. All descriptions of statements made by witnesses are provided in sum and substance and relevant part.

compromised credit or debit cards; (3) transfer the fraudulently obtained product to another conspirator who then (4) exchanges the product at a retail store for another electronic device, frequently at a higher price point (which has the effect of obscuring the initial fraudulent activity); and finally a member of the conspiracy (5) returns this second product for a full refund. By engaging in this scheme, the conspirators are able to profit from the initial identity theft in the form of the value of the refund they get at the end of the process, less the costs they incur in the purchase and exchange of the electronic devices.

6. The final refund is credited to a credit card account under the control of one of the conspirators, frequently the defendant OTABEK MUMINOV. As the evidence below demonstrates, the co-conspirators often travel in interstate commerce to achieve one or more of the transaction legs, e.g., by acquiring products in one state (such as New York) and exchanging or returning them to a store in a neighboring state (such as New Jersey).

7. The total value of merchandise that appears to have been fraudulently acquired by the defendants and co-conspirators in furtherance of the conspiracy is in excess of $1 million, as set forth in more detail below.

8. Specific instances of this scheme are also set forth in greater detail below.

Background on the Defendants and Co-Conspirators

9. OTABEK MUMINOV ("MUMINOV") is a legal permanent resident of the United States and is approximately 43 years old. He is a citizen of Uzbekistan. He is believed to reside in Brooklyn, New York. Based upon my participation in this investigation, I believe that MUMINOV uses a telephone number ending in 9454 ("the MUMINOV 9454 Phone") that is registered in the name of "Samir Martin" at an address on

65th Street in Brooklyn, New York.  As discussed further below, MUMINOV uses several Google email addresses in furtherance of the criminal activity under investigation, including but not limited to Google accounts associated with the usernames: brooklyn7265, pmets22, promets78, usmets22, uzmets, uzmets22, and uzmets7625 (collectively, "the MUMINOV Gmail Addresses").

10. NADJET BENMESSAOUD ("BENMESSAOUD") is approximately 34 years old and is a lawful resident of the United States.  As reflected below, BENMESSAOUD typically is responsible for exchanging the fraudulently obtained electronic devices.  BENMESSAOUD and MUMINOV appear to currently cohabitate, though MUMINOV maintains a residence on Bay 37 Street in Brooklyn, New York ("the MUMINOV RESIDENCE"), and BENMESSAOUD also maintains a presence on 18th Street in Brooklyn ("the BENMESSAOUD PREMISES").  These two defendants appear to have been in a romantic relationship since at least 2016.  BENMESSAOUD uses a Google email address with the username dugga.kikka ("the BENMESSAOUD Gmail Address").

11. Co-Conspirator 1, or "CC-1," whose identity is known to your affiant,



12. MUKHAMMADKHON TOJIEV ("TOJIEV") is approximately 29 years old and is a lawful permanent resident of the United States. He is a citizen of Uzbekistan. TOJIEV is believed to reside in Brooklyn, New York. Based upon my participation in this investigation, I believe that TOJIEV uses a telephone number ending in 1774 ("the TOJIEV 1774 Phone") and that TOJIEV uses a Google email address with the username mukhammad1774 ("the TOJIEV Gmail Address").

13. MUMINOV, via the MUMINOV 9454 Phone, and TOJIEV, via the TOJIEV 1774 Phone, based upon my review of telephone records, were in frequent contact between December 2018 and October 2020.

The August 2019 Purchase Using John Doe-1's Credit Card

14. On August 31, 2019, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15. The August 31, 2019 purchase was for an Apple laptop bearing an alphanumeric serial number ending in LVDD ("the LVDD Laptop"). (Apple's sales records document the serial number of several types of Apple products when sold, including but not limited to the LVDD Laptop in question in this purchase). The LVDD Laptop ▮▮▮▮ was bought with an American Express card ending in the digits 2005 ("the 2005 AMEX Card"). The total charged to the 2005 AMEX Card was $2,176.41. It is my understanding that the 2005 AMEX Card (and the other credit cards described in this

application) are "access devices" as that term is defined in Title 18, United States Code, Section 1029(e)(1).

16. Records from American Express reveal that the 2005 AMEX Card was an account belonging to John Doe-1, whose identity is known to your affiant.[2] In connection with this investigation, John Doe-1 participated in a voluntary interview in December 2019. John Doe-1 stated that he had not authorized this charge. Account records further reflect that John Doe-1 contested or disputed this charge and that it was reversed.

17. ███████████████████████████████████████████████████████████████████████████████

18. On September 3, 2019, BENMESSAOUD exchanged the LVDD Laptop for a larger, more expensive laptop bearing an alphanumeric serial number ending in LVCF ("the LVCF Laptop"). The LVCF Laptop cost $2,611.91. The exchange was done at an Apple Store located on Fifth Avenue in Manhattan, New York. BENMESSAOUD paid an additional $435.50 to cover the difference in purchase price, using a TD Bank debit card ending in 9494 ("the 9494 TD Bank Card"). TD Bank records reflect that the 9494 TD Bank Card is registered to BENMESSAOUD at 65th Street in Brooklyn, New York (the address associated with the "Samir Martin" persona associated with the 9454 Phone referenced in paragraph 9, above). I have also reviewed surveillance camera footage associated with this exchange and have familiarized myself with BENMESSAOUD's

---

[2] I am unaware of any criminal history for John Doe-1, and unaware of any reason to suspect bias on the part of John Doe-1.

appearance during the course of this investigation, and believe that the person depicted conducting this exchange is in fact BENMESSAOUD. A portion of a photograph drawn from the footage is depicted below.[3]



19. As reflected in the footage, BENMESSAOUD is carrying a distinctively-colored shopping bag during this transaction, the side of which is depicted in the second photograph above.

20. The next day, September 4, 2019, MUMINOV returned the LVCF Laptop to an Apple store located in Huntington, New York, within the Eastern District of New York. A refund of $2,611.91 was credited to the 9494 TD Bank Card as a result of this transaction. In addition to the use of the 9494 TD Bank Card that is associated with BENMESSAOUD, I believe it was MUMINOV who conducted this return because security footage associated with the transaction reflects that MUMINOV is the individual depicted making the return. Portions of photographs drawn from that surveillance footage are depicted below.

---

[3] Where appropriate, I have included still photographs herein that were drawn from the surveillance footage (or selected portions of such photographs). As necessary, I have included redactions to obscure the appearance of other shoppers, individuals whom I have no reason to believe were involved in the criminal activity alleged herein.



21. I note that in the second photograph depicted above, the bag hanging over MUMINOV's left shoulder appears to be identical to the bag carried by BENMESSAOUD in the footage described and depicted in the photographs appearing after paragraph 18, above.

The February 5, 2020 Purchase Using Jane Doe-1's Credit Card

22. On February 5, 2020, [redacted] purchased an Apple laptop at [redacted] bearing an alphanumeric serial number ending in EL410 ("the EL410 Laptop"). The total purchase price was $1,632.04.

23. The EL410 Laptop was purchased with a Barclays Bank credit card ending in 3488 ("the 3488 Barclays Card"). Barclays records reflect that this account belongs to Jane Doe-1, whose identity is known to your affiant.[4] Jane Doe-1 has stated that this February 5 purchase of the EL410 Laptop was not authorized by her.

---

[4] I am unaware of any criminal history for Jane Doe-1, and unaware of any reason to suspect bias on the part of Jane Doe-1.

Case 1:21-mj-01180-RML   Document 5   Filed 10/19/21   Page 11 of 19 PageID #: 79

11

24. On February 6, 2020, TOJIEV exchanged the EL410 Laptop for an Apple iPad Pro bearing an alphanumeric serial number ending in K824 ("the K824 iPad") at an Apple Store in Paramus, New Jersey. The K824 iPad cost $1,789.17. TOJIEV paid the difference of $157.13 using a JPMorgan Chase Bank debit card ending in the digits 5526 ("the 5526 Chase Card"). Chase records reflect that the 5526 Chase Card is registered in the name of TOJIEV.

25. I have reviewed video surveillance, which reflects that MUMINOV was present in the Paramus Apple Store during at least part of this exchange by TOJIEV. Still photographs drawn from that surveillance footage are depicted below; MUMINOV is the individual on the left and TOJIEV is the individual on the right.

 

26. On February 9, 2020, MUMINOV returned the K824 iPad to an Apple Store located in Wayne, New Jersey, indicating that TOJIEV transferred this device to MUMINOV. Apple and JPMorgan Chase Bank records reflect that a total of $1,789.17 was credited to a JPMorgan Chase Bank credit card ending in the digits 9424 ("the 9424 Chase

Card"). The 9424 Chase Card is registered to a New York State corporation that is, in turn, registered to MUMINOV. JPMorgan Chase Bank records also reflect that the MUMINOV 9454 Phone is identified as the principal contact number for the 9424 Chase Card.

27. In addition to the fact that the funds were credited to the 9424 Chase Card, I believe that MUMINOV returned the K824 iPad on February 9, 2020, because I have reviewed Apple surveillance footage associated with this transaction. MUMINOV appears in this footage and was the individual who returned the K824 iPad.

The February 9, 2020 Purchase Using Jane Doe-1's Credit Card

28. The co-conspirators used the 3488 Barclays Card again several days later in a similar fashion.

29. On February 9, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ within the Eastern District of New York, bearing an alphanumeric serial number ending in RL410 ("the RL410 Laptop"). The purchase price was $1,632.04, charged to the 3488 Barclays Card. As with the EL410 Laptop purchase, Jane Doe-1 has stated that the RL410 Laptop purchase was not authorized by her.

30. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on February 13, 2020, MUMINOV exchanged the RL410 Laptop for an Apple iPad bearing an alphanumeric serial number ending in KC6T ("the KC6T iPad") at an Apple Store located in Edison, New Jersey. The KC6T iPad cost $1,811.56. MUMINOV paid the difference in purchase price of $179.52 using a Comenity Bank credit card number ending in 9882 ("the 9882 Comenity Card"). Records from Comenity Bank reveal that this card is registered in the name of BENMESSAOUD.

31.     The following day, at an Apple Store in Wayne, New Jersey, the KC6T iPad was returned for a refund credited to the 9882 Comenity Card in the amount of $1,811.56.

The February 7, 2020 Purchase Using Jane Doe-2's Credit Card

32.     On February 7, 2020, , bearing an alphanumeric serial number ending in PXL410 ("the PXL410 Laptop").   The total purchase price was $1,632.04.                                                                                           .

33.     The PXL410 Laptop was purchased with a Barclays Bank credit card ending in 8047 ("the 8047 Barclays Card").[5]   Barclays Bank records reflect that this account belongs to Jane Doe-2, whose identity is known to your affiant.[6]   Jane Doe-2 has stated that this purchase of the PXL410 Laptop was not authorized by her.

34.     On February 11, 2020, TOJIEV exchanged the PXL410 Laptop for an Apple iPad Pro bearing an alphanumeric serial number ending in GFK824 ("the GFK824 iPad") at an Apple Store in Manhattan, New York.   The GFK824 iPad cost $1,686.47.   Surveillance footage associated with this incident reflects that TOJIEV is the individual engaged in this transaction.   TOJIEV paid the difference of $54.43 using a Ipak Yuli Bank

---

[5] Barclays Bank records also reflect that the 8047 Barclays Card was used at an Apple Store in Brooklyn, New York, on February 5, 2020; and an Apple Store in Manhattan, New York, on February 6, 2020; and attempted to be used at an Apple Store in Manhattan, New York, on February 8, 2020 (this attempted purchase appears to have been declined twice in quick succession).

[6] I am unaware of any criminal history for Jane Doe-2, and unaware of any reason to suspect bias on the part of Jane Doe-2.

debit card ending in the digits 4859 ("the 4859 IY Card"). According to publicly-available information, Ipak Yuli Bank is a bank in Uzbekistan, of which both MUMINOV and TOJIEV are citizens.

35. Later that same day, TOJIEV returned the GFK824 iPad to an Apple Store in Brooklyn, New York, with the refund credited to the 4859 IY Card. The surveillance footage associated with this transaction reflects that TOJIEV is depicted.

The July 9, 2021 Purchase Using Jane Doe-3's Credit Card

36. On July 9, 2021, ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

37. The HP Laptop ███████████ was bought with a TD Bank debit card ending in the digits 2739 ("the 2739 Debit Card"). The total charged to the 2739 Debit Card was $1883.58. TD Bank records reflect that the 2739 Debit Card belongs to Jane Doe-3, whose identity is known to your affiant.[7] Jane Doe-3 has stated that she ███████ ███████ did not authorize the July 9, 2021 purchase of the HP Laptop using the 2739 Debit Card.

38. ███████████████████████████████

███████████████████████████████████████

---

[7] I am unaware of any criminal history for Jane Doe-3, and unaware of any reason to suspect bias on the part of Jane Doe-3.



39.     On July 14, 2021, surveillance footage shows MUMINOV exiting his residence in Brooklyn at approximately 10:00 a.m., holding a Best Buy bag ██████████████████████████████████████████████████████████  At approximately 12:18 p.m. that same day, MUMINOV returned the HP Laptop to a Best Buy store located in Iselin, New Jersey.  Best Buy store security footage associated with this transaction reflects that it is MUMINOV making the purchase.  According to Best Buy records, MUMINOV exchanged the HP Laptop for two Apple MacBook Pro laptops (the "Iselin MacBooks").  The Iselin MacBooks, together, cost $435.54 more than the HP Laptop, and MUMINOV paid the difference in cash.

40.     During the July 14, 2021 exchange, MUMINOV also presented a Best Buy Member ID, which was referenced on the receipt under the name "OTABEK," (i.e. the defendant's first name).  Shortly after the exchange and at the same Best Buy store, MUMINOV purchased candy and potato chips using a Wells Fargo debit card ending in 0866 ("the 0866 WF Card").  Wells Fargo account records reflect that the 0866 WF Card is associated with a checking account registered to MUMINOV.

---

[8] As the accompanying search warrant more fully describes, I believe that MUMINOV resides at both addresses.

41. Finally, at approximately 1:30 p.m., pole camera footage shows MUMINOV returning to his residence with a Best Buy shopping bag.

The Co-Conspirators Use of Emails to Facilitate Fraudulent Exchanges and Returns

42. The transactions summarized above reflect several examples of the fraudulent acquisitional purchases, exchanges, and returns that have resulted in more than $1 million total in fraudulent transactions in Apple products and other electronics at retailers in the New York City metropolitan area and elsewhere.

43. In the course of this investigation, the FBI has collected information from various email accounts related to this investigation. In sum and substance, those records reflect that the co-conspirators receive receipts for their Apple purchases from Apple Stores via email, and then forward those receipts to other co-conspirators to facilitate the exchange transaction or return transaction that is a part of their criminal scheme.

44. For example, within the emails associated with one of the MUMINOV Gmail Addresses, there are numerous emails forwarding or receiving receipts for Apple Store transactions from the TOJIEV Gmail Address and the BENMESSAOUD Gmail Address, including but not limited to the following:

- Aug. 25, 2019: MUMINOV (via the uzmets Gmail Address) sent BENMESSAOUD a copy of a receipt for an exchange MUMINOV had done earlier that same day at an Apple Store in Manhattan, New York; this receipt reflects that MUMINOV exchanged a MacBook Pro laptop ($1,799) for a more valuable MacBook Pro laptop ($1,999).

- Sept. 3, 2019: MUMINOV (via the uzmets Gmail Address) sent BENMESSAOUD a copy of a receipt for an exchange MUMINOV had done the day prior at an Apple Store in Brooklyn, New York; this receipt reflects that MUMINOV exchanged an iPad Pro ($999) for a more valuable iPad Pro ($1,149).

- <u>Sept. 28, 2019</u>: MUMINOV (via the promets78 Gmail Address) sent TOJIEV a copy of a receipt for an exchange MUMINOV had done earlier that same day at an Apple Store in Manhattan, New York; this receipt reflects that MUMINOV exchanged a MacBook Pro laptop ($2,799) for a more valuable MacBook Pro laptop ($3,949).

- <u>Dec. 11, 2019</u>: MUMINOV (via the pmets22 Gmail Address) sent BENMESSAOUD a copy of a receipt for an exchange MUMINOV had done the day prior at an Apple Store in Wayne, New Jersey; this receipt reflects that MUMINOV exchanged a MacBook Pro laptop ($3,899) for a smaller MacBook Pro laptop ($2,699) and an iPad Pro ($1,349).

- <u>Dec. 24, 2019</u>: MUMINOV (via the uzmets22 Gmail Address) sent TOJIEV a copy of a receipt for an exchange MUMINOV had done the day prior at an Apple Store in Staten Island, New York; this receipt reflects that MUMINOV exchanged a MacBook Pro laptop ($2,399) for a more valuable MacBook Pro laptop ($2,699).

- <u>June 11, 2020</u>: MUMINOV (via the uzmets7625 Gmail Address) sent himself (via the uzmets Gmail Address) a copy of a receipt for a February 1, 2020, return MUMINOV had done at an Apple Store in Brooklyn, New York; this receipt reflects that MUMINOV returned an iPad Pro ($1,699) and an associated AppleCare protection plan ($129).

45. The records associated with MUMINOV's uzmets Gmail Address, also included a photograph, a portion of which is depicted below:



46. Based upon my training and experience, I believe that the bands of currency depicted in just the portion of the photograph depicted above (assuming they are genuine U.S. currency) total $100,000 or more, which, based upon my participation in this investigation, I believe to represent fraudulent proceeds of the criminal offenses under investigation.

47. I also note that the lower right-hand corner of the above photograph depicts an Uzbekistan passport issued in the name of and depicting OTABEK MUMINOV.

19

WHEREFORE, your deponent respectfully requests that the defendants be dealt with according to law.

*Stephen G. Hoffman*
STEPHEN G. HOFFMAN
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by electronic means this
19th day of October, 2021

_____*Robert Levy*_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK